# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTELLA DORVAL | CRIMINAL ACTION<br>NO. 23-165 |

**Pappert, J.**                                                                                                                              **December 30, 2025**

## MEMORANDUM

Christella Dorval moves for early termination of her three-year term of supervised release. The Government opposes her motion[1] and the Court denies it.

## I

On May 8, 2023, Christella Dorval pleaded guilty to two counts of wire fraud in violation of 18 U.S.C. § 1343. She submitted fraudulent loan applications to the United States Small Business Administration Paycheck Protection Program and stole several hundred thousand dollars in the process. *See* (Gov't Resp. at 1–2.) She faced a maximum sentence of up to forty years of imprisonment, three years of supervised release, a $500,000 fine, and a $200 special assessment. (Gov't Sentencing Mem. at 5, Dkt. No. 25.) The Court sentenced her to a year and a day in prison, followed by three years of supervised release and ordered her to pay a $200 special assessment, $306,377 in restitution, and $102,627 in forfeiture. (Dkt. No. 26.) The sentence did not represent an upward departure or variance from the guideline range. (Gov't Resp. at 2–3.) Dorval completed her prison sentence and began her supervised release term on July

---

[1] The Court need not address the Government's argument that Dorval's plea agreement bars the relief she seeks. (Gov't Resp. at 3-11, Dkt. No. 38.) Regardless of whether Dorval waived her ability to challenge her term of supervised release, early termination is not warranted.

29, 2024.  She has thus served a little over sixteen months of that term.  *See* (Def.'s Mot. at 1, Dkt. No. 36).

In seeking early termination, Dorval says she has maintained steady employment and provided a stable home for her husband and two children.  (*Id.* at 1–2.)  She claims that getting off supervised release would allow her to "devote her time" to the process of obtaining reinstatement of her professional licenses in assisted living.  (*Id.* at 2.)  Those licenses, Dorval alleges, would allow her to benefit her family and support her rehabilitation and reintegration into society.  (*Id.*)

## II

The Court "may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).  When assessing early termination, the Court considers:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (listing the 18 U.S.C. § 3553(a) factors relevant to a request for early termination of supervised release) (citations omitted).  The "expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a range of circumstances

when determining whether to grant early termination." *Id.* (citation modified).

A

Dorval has not shown the relevant sentencing factors support early termination. First, the nature and circumstances of her offense—wire fraud in excess of $300,000—were serious. For over a year, she defrauded a federal government loan program meant to rescue small businesses suffering during the COVID-19 pandemic. *See* (Gov't Sentencing Mem. at 1, 10).

Second, though Dorval has no prior criminal history, maintaining her supervised release will help keep her from "backslid[ing]" and "protect against future criminal conduct." *United States v. Thena*, No. 12-cr-133, 2025 WL 2165937, at *2 (E.D. Pa. July 30, 2025).

Third, Dorval's supervised release term fell within the guidelines range of three years. (Gov't Sentencing Mem. at 5.)

Fourth, nothing in the Sentencing Guidelines suggests that Dorval's term of supervised release is too long. The Sentencing Commission added on November 1, 2025 new factors "the court may wish to consider," which include: any history of court-reported violations during the term of supervision, the defendant's ability to lawfully self-manage, substantial compliance with the conditions of supervision, the defendant's engagement in prosocial activities, a demonstrated reduction in risk level, and whether termination will jeopardize public safety. U.S. Sentencing Guidelines Manual § 5D1.4(b) app. n.1(b). Dorval has complied with many of these factors but, for the reasons already stated, the Court still has concerns about the risk she poses to the public given the nature and severity of her crimes.

Finally, Dorval has apparently paid her court-ordered restitution. (Def.'s Mot. at 1.)

B

Dorval has not shown early termination would be in the interest of justice. She alleges that she has been a "a model probationer" by maintaining steady employment, providing for her family, and hoping to reinstate her professional licenses. (Def.'s Mot. at 1–2.) Though her "good behavior and constructive and rehabilitative actions" are noteworthy, *United States v. Miller*, No. 23-2932, 2024 WL 4971948, at *3 (3d Cir. Dec. 4, 2024), "good behavior, without more, is insufficient to justify early termination," *Thena*, 2025 WL 2165937, at *2. Dorval has shown no particular hardship caused by the conditions of her supervision. Indeed, she relies heavily in her motion on the need to get off supervised release so she can have time to pursue reinstatement of her professional licenses and that further supervision will impede her ability to remain employed as she seeks job advancement. (Def.'s Mot. at 1–2.) But she never explains how continuing to abide by her release conditions will hinder her ability to do any of that. Nor does she present any unforeseen or extraordinary circumstances that show a particular need for early termination. *Melvin*, 978 F.3d at 53 (explaining that extraordinary circumstances may be sufficient to justify early termination).

The Court credits Dorval for her accomplishments and encourages her to satisfactorily complete her term of supervised release.

An appropriate Order follows.

                                      BY THE COURT:

                                      ***/s/ Gerald J. Pappert***
                                      Gerald J. Pappert, J.